﻿Citation Nr: 18107536
Decision Date: 06/04/18 Archive Date: 06/02/18

DOCKET NO. 15-04 271A
DATE: June 4, 2018
ORDER
Entitlement to a rating in excess of 20 percent for prostate cancer, status post radical prostatectomy from January 1, 2014 to May 22, 2016 is denied.
FINDINGS OF FACT
1. From January 1, 2014 to May 22, 2016, the Veteran’s prostate cancer residuals did not manifest themselves as daytime voiding less than one hour or awaking to void five or more times a night, or the wearing and changing of absorbent materials which must be changed two to four times a day.
2. The Veteran has been granted a 100 percent schedular rating for prostate cancer, status post radical prostatectomy since May 23, 2016.
CONCLUSION OF LAW
From January 1, 2014 to May 22, 2016, the criteria for a rating in excess of 20 percent for prostate cancer, status post radical prostatectomy have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-14, 4.115(a), Diagnostic Code 7528 (2017).
REASONS AND BASES FOR FINDING AND CONCLUSION
During the pendency of the appeal, in an October 2017 rating decision, the RO granted an increased rating to 100 percent for prostate cancer, status post radical prostatectomy effective May 23, 2016.
The Board notes that the grant of 100 percent was a partial grant of benefits as the award did not cover the entire period on appeal. Thus, the issue has been characterized as such above.
1. Entitlement to a rating in excess of 20 percent for prostate cancer, status post radical prostatectomy from January 1, 2014 to May 22, 2016
Disability evaluations are determined by comparing a veteran’s present symptoms with the criteria set forth in the VA’s Schedule for Rating Disabilities (rating schedule), which is based on average impairment in earning capacity. 38 U.S.C. § 1155 (2012); 38 C.F.R. Part 4 (2017). When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. Furthermore, when it is not possible to separate the effects of the service-connected disability from a nonservice-connected condition, such signs and symptoms must be attributed to the service-connected disability. 38 C.F.R. § 3.102; Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam).
Additionally, the Board has a duty to consider all claims reasonably raised by the record and to assign the diagnostic code most favorable to the Veteran, and therefore must consider all relevant diagnostic codes, not just the diagnostic code currently assigned to the Veteran. See Esteban v. Brown, 6 Vet. App. 259, 261 (1994); Fanning v. Brown, 4 Vet. App. 225, 228 (1993).
In this case, the Veteran’s prostate cancer, status post radical prostatectomy has been rated as 100 percent from May 23, 2016 under Diagnostic Code 7528. Diagnostic Code 7528 affords a single temporary 100 percent evaluation and contains no listed symptoms or conditions for that rating, and no lower percent evaluations that can be assigned. 38 C.F.R. § 4.115(b). It is awarded only if a condition is in active malignancy while a Veteran is undergoing therapeutic treatment. See id. Diagnostic Code 7528. This is demonstrated by the only Note to Diagnostic Code 7528 which states: “following the cessation of surgical, X- ray, antineoplastic chemotherapy or other therapeutic procedure, the rating of 100 percent shall continue, with a mandatory VA examination at the expiration of six months.” Id. Any change in evaluation based upon that or any subsequent examination are subject to the provisions of 38 C.F.R. § 3.105(e). Id. Moreover, if, upon examination, there has been no local reoccurrence or metastasis, the disability is to be rated on “residuals such as voiding dysfunction or renal dysfunction, whichever is predominant.” Id. As such, given that the Veteran’s 100 percent rating for prostate cancer is temporary by definition, no finding of material improvement under the ordinary conditions or life and work is required. As Diagnostic Code 7528 does not require any associated symptoms or conditions, any dysfunction remaining after cessation of treatment is to be rated on the basis of voiding dysfunction or renal dysfunction, whichever residual is predominant. See 38 C.F.R. § 4.115(b).
From January 1, 2014 to May 22, 2016, the Veteran was assigned a 20 percent rating for voiding dysfunction resulting from prostate cancer residuals.
38 C.F.R. § 4.115(a) covers all dysfunctions of the genitourinary system, whether renal or voiding. Renal pertains to kidney dysfunction, while voiding pertains to other urinary dysfunction. When rating voiding dysfunction, a rating level is selected on the basis of urine leakage, urinary frequency, or obstructed voiding, whichever category is most applicable to the Veteran’s symptoms. See id. 
For urine leakage the lowest rating of 20 percent is assigned if the Veteran’s condition requires the wearing of absorbent materials that must be changed less than two times a day. Id. A higher rating of 40 percent is appropriate if absorbent materials must be changed two to four times a day. Id. Finally, the highest rating of 60 percent is appropriate if the use of an appliance is required or absorbent materials must be changed more than four times a day. Id.
For urinary frequency, the lowest rating of 10 percent is required if there is daytime voiding every two to three hours, or nocturnia two times per night. Id. A higher rating of 20 percent is appropriate if there is daytime voiding every one to two hours, or nocturnia three to four times a night. Id. Finally, the highest rating of 40 percent is appropriate if there is daytime voiding less than every hour or nocturnia five or more times a night. Id.
Finally, for obstructed voiding, a noncompensable rating is assigned if there are obstructive symptoms with or without stricture disease requiring dilation one to two times per year. Id. A higher 10 percent rating is appropriate if the Veteran presents with marked obstructive symptoms such as hesitancy, weak stream, or decreased force of stream with any one or combination of the following: (1) post void residuals greater than 150 cc; (2) “uroflowmetry,” defined as markedly diminished peak flow rate (less than 10cc/sec.); (3) recurrent urinary tract infections secondary to obstruction; and (4) stricture disease requiring periodic dilatation every two to three months. A 30 percent rating is in order where there is urinary retention requiring intermittent or continuous catheterization Id.
The Veteran submitted a statement in December 2016 in which he indicated that at his May 23, 2016 appointment he was informed that his prostate-specific antigen (PSA) had increased and he was prescribed medication (Bicalutamide)to treat his prostate cancer. The Veteran further provided that at a subsequent November 21, 2016 appointment, he was instructed that he would need to continue the medication for the remainder of his life. The Veteran indicated he was had side effects from the medication of rash, itching, tightness, increased urination, shortness of breath at times, and chest pain.
Prior to the period under consideration, in an August 2014 DBQ, the Veteran reported urine leakage that did not require the wearing of absorbent material and denied voiding dysfunction that did not require the use of an appliance. The examiner reported that the Veteran did not have urinary frequency or obstructed voiding. It was noted that the Veteran’s PSA had been undetectable since the prostatectomy. VA medical examination dated in October 2013 shows that the Veteran’s treatment for prostate cancer had been completed and that he was in watchful waiting status. The examiner noted that the Veteran had urine leakage that required the use of absorbent materials that had to be changed less than 2 times per day. The examiner also indicated that the Veteran had to use pads due to the leakage. The Veteran reported that he had residual daytime voiding between one and two hours and nighttime voiding of at least two times per night. Obstructed voiding manifested by hesitancy, slow or weak stress and decreased force of stream was noted. 
The Board notes that there is not adequate contemporaneous medical evidence for the period in question to determine whether an increase is warranted; however, some of the later dated medical evidence provides some useful information. In this regard, as private treatment record from South County Urological dated September 2017 and authored by Dr. A. H. indicated that the Veteran had been treated for his prostate cancer since April 2011. The record indicated that the Veteran’s PSA began to rise in November 2014 and increased with each test over a two-year period from September 8, 2011 to May 7, 2016. The Veteran started Casodex on May 26, 2016. The Veteran’s PSA results returned to lower results since he began Casodex medication management. The provider recommended that the Veteran continue taking this medication to keep his PSA within a safe range.
A private treatment record from Barnes Jewish Hospital and authored by Dr. R. V. indicated that the Veteran’s PSA began to gradually rise in November 2014. In May 2016, the Veteran began treatment with Casodex and his PSA went down in November 2016. The Veteran had urinary incontinence and used 4-6 pads per day.
VA treatment records dated August 2017 indicated that the Veteran received treatment for his prostate cancer residuals in the form of medication (Casodex) taken daily. The Veteran was voiding and wore 4-6 pads per day. The Veteran continued to receive treatment from a private medical provider.
The Veteran was afforded a VA examination in September 2017. The examiner confirmed a diagnosis of prostate cancer. The Veteran’s prostate cancer was indicated as active. The Veteran underwent a radical prostatectomy in 2011 and began antineoplastic chemotherapy. The Veteran was noted to be taking Casodex with no anticipated date of completion. The Veteran had voiding dysfunction which required changing 4-6 times per day. He had daytime voiding of between one and two hours and nighttime awakening to void 3-4 times.
The evidence of record indicates that the Veteran’s prostate cancer, status post radical prostatectomy increased in severity beginning May 23, 2016. The Veteran began antineoplastic chemotherapy on that date. The Veteran has been awarded a 100 percent schedular rating for his prostate cancer residuals from May 23, 2016. The evidence does not indicate that the Veteran met the schedular criteria for a rating higher than 20 percent from January 1, 2014 to May 22, 2016. For this period, the evidence does not show renal dysfunction; urine leakage requiring the wearing of absorbent materials which had to be changed 2 to 4 times per day; daytime voiding interval of less than one hour or awakening to void five or more times per night; or urinary retention requiring intermittent or continuous catheterization. As such, under the applicable VA schedular criteria, from January 1, 2014 to May 22, 2016, the Veteran is entitled to no higher than a 20 percent rating for his prostate cancer residuals.
 
S. L. Kennedy
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD N.M. Floore, Associate Counsel